UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON CAVIANI,<br><br>   Plaintiff,<br><br>   v.<br><br>MENTOR GRAPHICS CORPORATION,<br><br>   Defendant. | Case No. 19-cv-01645-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Docket No. 24 |

Plaintiff Ron Caviani filed suit in Alameda County superior court alleging various FEHA discrimination claims. Defendant Mentor Graphics removed to federal court. Docket No. 1. The parties exchanged multiple meet-and-confer correspondences regarding the enforceability of an arbitration agreement. Pending before the Court is Defendant's motion to compel arbitration and to stay proceedings ("Mot."). Docket No. 24.

## I.  BACKGROUND

The parties do not dispute most facts. Defendant extended an offer of employment to Plaintiff on June 18, 2008; he signed the following day. Mot. at 2; Opp. at 4. Plaintiff began working on June 26, 2008, and he signed the at-issue arbitration agreement ("Agreement") on June 30, 2008. Mot. at 2; Opp. at 4. The Agreement is one page, and its "Final and Binding Arbitration" clause reads as follows:

> All Disputes shall be submitted to and resolved by final and binding arbitration. The arbitration will be conducted under the rules and procedures of JAMS (formerly known as Judicial Arbitration & Mediation Services, Inc.) or its successor, before a mutually agreed upon neutral arbitrator selected in accordance with the JAMS Employment Arbitration Rules or their equivalent. Mentor Graphics will pay any required arbitrator's fees. Each party will be

> responsible for its own attorney's fees and other costs, fees and disbursements incurred. The arbitration will be held in the state and county in which you are/were employed.

Declaration of Sandy Bradshaw in Support of Defendant's Motion to Compel Arbitration ("Bradshaw Decl."), Ex. D.

The parties dispute whether Defendant included the Agreement with the initial offer letter. Reply at 6; Opp. at 6. The parties also dispute the characterization of Plaintiff's transition into a new role with Defendant in 2012 when he received a promotion from inside sales representative to territory account manager. Defendant contends it was an internal transfer that maintained the parties' preexisting employment relationship and agreement to arbitrate all claims. Mot. at 4. Plaintiff argues it was an entirely new employment offer in which Defendant did not provide a new agreement to arbitrate. Opp. at 4. Plaintiff never signed the 2012 letter; Defendant does not dispute this. *Id*. Defendant terminated Plaintiff in 2017. Defendant brought this motion to compel arbitration.

## II. LEGAL STANDARD

Arbitration agreements are "valid, irrevocable, and enforceable" under the Federal Arbitration Act. 9 U.S.C. § 2. Section 2, however, "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Plaintiff bears the burden of showing that an arbitration agreement should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Under California law, for a party to claim a contract is unconscionable, it must show that it is both procedurally and substantively unconscionable. *Dalton v. J. Mann Inc.*, 2016 WL

2

5909710, at *3 (N.D. Cal. Oct. 11, 2016). "A sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 178 (2015). When evaluating procedural unconscionability, courts focus on oppression or surprise that results from unequal bargaining power; while evaluating substantive unconscionability, courts are more concerned with overly harsh or one-sided results. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).

### III. DISCUSSION

Plaintiff challenges enforcement in three ways: (1) Plaintiff contends there is no valid Agreement because of formation defects; (2) the Agreement is substantively unconscionable; and (3) the Agreement is procedurally unconscionable. Defendant responds by arguing that it has demonstrated the existence of an arbitration agreement by a preponderance of the evidence, and that the parties clearly and unmistakably delegated arbitrability of the Agreement to the arbitrator.

A.   Formation of Arbitration Agreement

Plaintiff makes two formation arguments. First, he contends he did not agree to arbitrate his claims because at the time he signed his offer of employment, it did not contain the Agreement, despite the offer expressly stating that employment was conditioned on signing the Agreement. Opp. at 6. More specifically, he signed the employment offer on June 19, 2008, began working for Defendant on June 26, 2008, but signed the Agreement to arbitrate all claims on June 30, 2008—which is Plaintiff's way of saying he did not agree to arbitration ***at the time he formed an employment relationship with Defendant***. Plaintiff's second argument against formation relates to his 2012 promotion, which did not come with a new arbitration agreement. Plaintiff contends that this new job offer required a separate arbitration agreement. Opp. at 8. Defendant's position is that the 2012 promotion was an internal transfer that maintained the parties' preexisting employment relationship and agreement to arbitrate all claims. Mot. at 4.

1.   The 2008 Employment Offer

California state law governs the formation issue, and Defendant bears the burden of "proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia*

3

*v. Samsung Telecommunications America, LLC*, 845 F.3d 1279, 1283 (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)); *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Norcia*, 845 F.3d at 1284 (quotation omitted). An offeree's consent to the terms of a contract may be inferred based on conduct consistent with acceptance. *Id.*

The 2008 employment offer contained the following language:

> In order to process your payroll enrollment in a timely manner, you MUST execute the enclosed Confidentiality and Mutual Arbitration Agreements on your first day of employment at Mentor.
>
> ¶ . . . I accept your offer of employment and understand that this document and its attachments do not create a contract and that Mentor Graphics or I may terminate my employment at any time for any reason. I also agree that any disputes that may arise between us will be resolved pursuant to binding arbitration as described in the Mutual Arbitration Agreement.

Bradshaw Decl., Ex. C, at 2–3 (emphasis in original). Plaintiff argues that there was no meeting of the minds regarding Defendant's employment offer and Plaintiff's acceptance because "the offer letter of 2008 condition[ed] the employment on signing the Mutual Arbitration Agreement[,] which was not provided to Plaintiff at the time." Opp. at. 6–7. He commenced employment without signing the Agreement. Plaintiff relies on general principles of contract law—*i.e.*, that "[t]erms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract; and a qualified acceptance amounts to a new proposal or counteroffer putting an end to the original offer." *Id.* at 6 (citing *Panagotacos v. Bank of America*, 60 Cal. App. 4th 851 (1998)). Defendant, on the other hand, contends that Plaintiff did, in fact, receive the Agreement at the time he signed the employment offer, as it is Defendant's standard practice to include it all in one packet. Reply at 6; Bradshaw Decl., at ¶ 5, Ex. A.

Even if, assuming *arguendo*, the Agreement did not come with the offer letter, he still faces a formation issue—because he signed it after his employment commenced. Even if there was a contract for employment formed when he began work on June 26, 2008, and that contract did not contain the Arbitration Agreement, Plaintiff subsequently signed the standalone

4

Arbitration Agreement on June 30, 2008. That Arbitration Agreement may be treated as a new contract, separate and apart from the employment offer and acceptance. There was valid consideration for the Agreement as it is bilateral. Moreover, Plaintiff's continued employment also constituted sufficient consideration. *See Asfaw v. Lowe's HIW, Inc.*, 2014 WL 1928612, at *3 (C.D. Cal. May 13, 2014) (citing *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 422 (2000)).

As such, there is a valid Arbitration Agreement.

2. The 2012 Promotion to Territory Account Manager

Plaintiff's alternative argument regarding formation is that his employment relationship changed in 2012 when he received a new job offer, thereby ending any preexisting agreements. Opp. at 8. He also claims that he never signed the 2012 offer. *Id*. at 12. Defendant argues that the 2012 letter itself refers to the new position as an "internal transfer." Reply at 7 (citing Bradshaw Decl., Ex. F). The copy of the letter attached to the declaration of Defendant's human resource director does not, however, include Plaintiff's signature despite there being a signature line. Bradshaw Decl., Ex. F, p. 2.

Regardless of the semantics surrounding to the 2012 promotion, the Agreement does not have any expiration clauses or temporal limitations. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 250 (1977) (where there is a "dispute over a provision of [an] expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."). If Plaintiff did not sign the 2012 letter, the 2008 Agreement would remain in effect; nothing in the terms of the 2008 Agreement prevents its ongoing effect. If Plaintiff did sign the 2012 letter, it incorporated the 2008 Agreement[1]—so the result is the same: the Agreement is in effect.

Accordingly, Defendant has met its burden by proving the existence of an agreement to arbitrate by a preponderance of the evidence.

---

[1] Bradshaw Decl., Ex. F, at 2 ("I accept your transfer of employment and understand that this document and its attachments do not create a contract and that Mentor Graphics or I may terminate my employment at any time for any reason. I also agree that any disputes that may arise between us will be resolved pursuant to binding arbitration as described in the Mutual Arbitration Agreement.").

5

B.  Delegation of Arbitrability

There is a presumption that the issue of arbitrability is a judicial determination—not one for an arbitrator to decide. *See Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "Such issues concern gateway questions of arbitrability, such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)

However, parties may delegate the adjudication of gateway issues of arbitrability to the arbitrator if they "clearly and unmistakably" agree to do so. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, (1995) (noting that "the question 'who has the primary power to decide arbitrability' turns upon whether the parties agreed about *that* matter[;] [d]id the parties agree to submit the arbitrability question itself to the arbitration?") (emphasis in original). "In cases where the parties 'clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator,' the district court's inquiry is 'limited . . . [to] whether the assertion of arbitrability is "wholly groundless."'" *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 975 (N.D. Cal. 2015).

Defendant argues that all issues related to arbitrability are delegated exclusively to the arbitrator, not the Court, because the Agreement incorporates by reference the rules and procedures of JAMS. Mot. at 7. When a signed arbitration agreement includes a reference to specific arbitration rules—*e.g.*, AAA, JAMS, etc.—the Ninth Circuit has held that the parties agreed to delegate arbitrability itself to the arbitrator. *See Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013). The Ninth Circuit reasons so because within those arbitration rules are clauses that specifically state that the arbitrator retains the jurisdiction to decide all issues. Specifically, here, Rule 11 of the JAMS arbitration rules states, in relevant part:

"[j]urisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitrator, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Declaration of Neda N. Dal Cielo in Support of Defendant's Motion to Compel Arbitration ("Dal Cielo Decl."), Ex. D at 5–6.

Plaintiff argues that the Agreement is silent as to who decides arbitrability, so the issue is reserved for the Court. Opp. at 8. At least one California Court of Appeal decision has found that mere incorporation by reference—without more—is not sufficient to constitute clear and unmistakable proof that the parties made a wholesale delegation of all issues to the arbitrator. *See Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 772, 781 (2012). Defendant contends that *Ajamian* does not apply. Defendant asserts *Ajamian*'s discussion on this issue as being *dictum* and, alternatively, claims the Agreement here is distinguishable because, there, the agreement allowed the court to rule on certain issues, as opposed to reserving all issues for the arbitrator. Here, Defendant argues the Agreement provides no such exceptions, and that the arbitrator decides all issues, leaving none for the Court. Reply at 3.

In any event, whether there is a clear and unmistakable agreement to delegate the question of arbitrability to the arbitrator involves the application of the FAA and is a question of federal law. As mentioned, in this Circuit, incorporation of, *e.g.*, JAMS rules by reference is generally sufficient to provide a basis for such a finding. In *Oracle*, 724 F.3d at 1069, the Ninth Circuit recognized that "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id*. at 1073–75. The *Oracle* court then went on to hold that the incorporation of United Nations Commission on International Trade Law ("UNCITRAL") arbitration rules constituted clear and unmistakable evidence that the parties to the contract intended to delegate questions of arbitrability to the arbitrator. *Id*. at 1075. The Ninth Circuit subsequently extended this rule to arbitration agreements that incorporated the AAA rules in the employment context. *Brennan v. Opus Bank*,

7

796 F.3d 1125, 1130 (9th Cir. 2015) ("we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."). However, "as long as an arbitration agreement is between *sophisticated* parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator." *Oracle*, 724 F.3d at 1075 (emphasis added).

Relying upon this open question, Plaintiff relies on *Zenelaj v. Handybook* which states that since *Oracle* left open the question of party sophistication, "the question of whether the incorporation of the AAA Rules is *always* 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability is not a clearly settled question of law in the Ninth Circuit." 82 F. Supp. 3d 968, 971 (N.D. Cal. 2015) (emphasis added). "It is therefore an appropriate interpretation of *Oracle America* that the Ninth Circuit issued a *narrow* holding limited to its facts—sophisticated parties to a commercial contract—but favorably acknowledged the "prevailing view" . . . all of which found clear and unmistakable delegation of arbitration regardless of the parties' sophistication. *Id*. at 973 (emphasis added). Notably, *Brennan* also left the issue of sophistication open. *Brennan*, 796 F.3d at 1131 ("Nevertheless, as in *Oracle America*, we limit our holding to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.'"). The employee in *Brennan* was an Executive Vice President and Director for Strategy and Corporate Development at Opus Bank. *Id*. at 1127. Further, neither *Brennan* or *Oracle* discussed whether the result would obtain if the party who presented the arbitration agreement failed to provide a copy, hyperlink, or any access whatsoever to the governing arbitration rules, which is what Plaintiff takes issue with here.

One pre-*Oracle* Ninth Circuit decision holds that failure to provide a copy of the rules will support a finding of procedural unconscionability. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010). Several post-*Oracle* decisions have found that the failure to provide a copy of the arbitration rules favors a finding of procedural unconscionability; those courts have found the delegation clause unenforceable. *See e.g.*, *Gountoumas v. Giaran, Inc.,* 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) ("Given that the delegation provision incorporated the AAA rules by reference and Plaintiff was not provided a copy of those rules, the Court concludes that this adds a

8

minimal degree of procedural unconscionability to the delegation provision"); *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2015) ("The 2012 agreement simply incorporated the AAA rules and stated the arbitrator shall have the power to rule on his or her own jurisdiction . . . ." The court decided that the delegation clause was procedurally unconscionable and substantively unconscionable, with the failure to provide a copy of the rules going towards procedural unconscionability.).

Here, it is undisputed that Plaintiff did not receive a copy of the JAMS rules that governs the Agreement. Nor did he receive a hyperlink to facilitate access to the rules. The Agreement itself does not have a specific delegation clause, so the only way Plaintiff could possibly know about the delegation of authority would be to perform his own independent due diligence by obtaining the JAMS rules, and searching through them to find the delegation clause and ascertain its meaning. This could lead to a finding a lack of clear and unmistakable delegation in some cases. As in *Oracle* and *Brennan*, however, Plaintiff herein is sophisticated. Plaintiff is a well-versed businessman, an MBA-program attendee, fluent in English, and had a 15-year history of business dealings. In 2008, Plaintiff was an Inside Sales Representative (receiving $82,200 in compensation). In 2012, he became a Territory Account Manager (receiving $195,000 in compensation). Moreover, Plaintiff was in possession of the Agreement for multiple days (which included a weekend) and had ample time to find and read the JAMS rules. *Oracle* controls.

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, the Court holds as follows: (1) notwithstanding Defendant's failure to provide a copy of the JAMS rules, under the circumstances of this case, the Agreement clearly and unmistakably delegates the power to determine arbitrability of a claim to the arbitrator because both parties were highly sophisticated; (2) therefore, the Court grants Defendant's motion to compel arbitration. The issue of arbitrability is one for the arbitrator to decide; and (3) all proceedings in this case are stayed pending the arbitration.

This order disposes of Docket No. 24.

**IT IS SO ORDERED**.

Dated: September 18, 2019

_____
EDWARD M. CHEN
United States District Judge